24

**FILED**

SEP 15 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

24
1  Michael H. Raichelson (#174607)
   Simon J. Dunstan (#164113)
2  **LAW OFFICES OF MICHAEL H. RAICHELSON**
   Suite 352
3  6400 Canoga Avenue
   Woodland Hills, California 91367
4  Telephone: (818) 444-7770
   Facsimile: (818) 444-7776
5
   Attorneys for Debtors
6  SAM RICHARD SANDS and
   VIRGINIA ANN SANDS
7

8

9                    UNITED STATES BANKRUPTCY COURT

10                   EASTERN DISTRICT OF CALIFORNIA

11                            FRESNO DIVISION

12                                    )  Case No.: 10-11012
                                      )
13  In re:                            )  Chapter 11
                                      )
14  SAM RICHARD SANDS and             )  DC NO: ~~MHR-10~~ MHR-8
    VIRGINIA ANN SANDS,               )
15                                    )  **FINDINGS OF FACT AND**
                                      )  **CONCLUSIONS OF LAW**
16            Debtors.                )
                                      )  Date: August 17, 2011
17                                    )
                                      )  Time: 1:30 PM
18                                    )
                                      )  Location: Department A, Courtroom 11, Fifth
19                                    )  Floor, 2500 Tulare Street, Fresno, California
                                      )
20                                    )
                                      )
21                                    )
                                      )
22 _____)

23

24          At the date, time and place set forth above, the Court conducted a hearing on

25  confirmation of Debtors' Chapter 11 Plan of Reorganization.

26          The Debtors appeared through counsel, Michael H. Raichelson. The United States

27  Trustee appeared through counsel. There were no other appearances.

28  ///

RECEIVED
September 06, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003750726

-1-

Based on the moving papers, Debtors' memorandum of points and authorities in support of confirmation, the stipulations filed in this matter in support of confirmation, and the representation of counsel, the Court makes the following Findings of Fact and Conclusions of Law:

FINDINGS OF FACT

1. On or about June 8, 2006, the Internal Revenue Service (the "Service") recorded its notice of federal tax liens for the periods December 21, 1999, December 31, 2000, and December 31, 2001, properly perfecting its federal tax liens against debtor's real and personal property.

2. Debtors filed a voluntary petition pursuant to chapter 11, title 11, of the United States Code on January 31, 2010.

3. Debtors filed an initial Disclosure Statement and Chapter 11 Plan of Reorganization on January 11, 2011.

4. Debtors filed their First Amended Disclosure Statement and First Amended Chapter 11 Plan of Reorganization on April 6, 2011.

5. The Court entered an Order approving Debtors' Disclosure Statement on May 4, 2011.

6. Debtors filed their First Chapter 11 Plan of Reorganization on May 20, 2011 (hereinafter referred to as the "Plan").

7. Notice of the hearing on Plan confirmation was given on May 20, 2011.

8. The Plan provides that compensation to professionals is subject to Court approval.

9. Payments made or to be made pursuant to the Plan have been disclosed.

10. The Plan identifies Debtors as the persons who will remain as managers of the Debtors' business affairs and discloses their sources of income.

11. On June 15, 2011, the Service filed its Objection to the Plan.

12. On August 1, 2011, the Service executed a stipulation resolving its Objection to the Plan referenced above. The stipulation constituted a ballot voting in favor of the Plan for the Service's Secured Claim and Unsecured Claim and treatment of these

-2-

---

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

1   Claims in the Plan will be consistent with the stipulation entered on August 8, 2011

2   (docket no. 100), a copy of which is attached hereto as **Exhibit "A".**

3   13. On August 12, 2011, Citibank N.A. as Trustee of SACO I Trust 2006-8 ("Citibank

4   N.A.") executed a stipulation resolving its treatment under the Plan. The stipulation

5   constituted a ballot voting in favor of the Plan for the Citibank N.A. Secured Claim

6   and Unsecured Claim and treatment of these Claims in the Plan will be consistent

7   with the stipulation entered on August 15, 2011 (docket no. 105), a copy of which is

8   attached hereto as **Exhibit "B".**

9   14. All fees that have come due under 28 U.S.C. section 1930 have been paid.

10  15. Any Conclusion of Law determined to be a Finding of Fact is hereby adopted as

11  such.

12                          CONCLUSIONS OF LAW

13  1.  Any Finding of Fact determined to be a Conclusion of Law is hereby adopted as

14      such.

15  2.  This Court has jurisdiction over the issue of confirmation of Debtor's Plan pursuant

16      to 28 U.S.C. section 1334 and this matter is a core proceeding as defined in 28

17      U.S.C. section 157(b)(2).

18  3.  Notice of the hearing was adequate.

19  4.  Debtors' Plan complies with all applicable provisions of Title 11 and was proposed

20      in good faith.

21  5.  The Debtors have complied with all applicable provisions of Title 11 and have acted

22      throughout this case in good faith.

23  6.  The estate is not subject to government regulation over its rates.

24  7.  The Plan satisfies the best interest of creditors test, such that creditors have either

25      voted in favor of the plan or will receive at least that which they would have received

26      in a hypothetical Chapter 7 liquidation.

27  8.  The following Classes have voted to accept the Plan or are unimpaired and deemed

28      to have accepted the Plan: The Service and Citibank, N.A.

-3 -

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

9. No Classes have been deemed to reject the Plan. The Plan is fair and reasonable and does not discriminate unfairly with respect to each such rejecting class. Further no junior class or interest is receiving or retaining any property under the Plan on account of such junior claim or interest.

10. The Plan provides appropriately for all claims entitled to priority under 11 U.S.C. section 507.

11. Following confirmation of this Plan, the Debtors are not likely to require further reorganization or liquidation. The Court has retained jurisdiction to consider further relief in the event Debtors fail to comply with their obligations under the Plan.

IT IS HEREBY ORDERED THAT:

A.     The Plan of Reorganization filed by the Debtors shall be and hereby is confirmed and approved.

B.     All provisions of the Plan not specifically set forth in this Order shall be incorporated into this Order as if fully set forth herein.

C.     The Debtors shall distribute all property to be distributed pursuant to the terms of the Plan. The Debtor may employ or contract with other entities to assist in or to perform the distribution of said property as provided for in the Plan.

D.     Upon the substantial consummation of the Plan, but in not less than sixty months after the Effective Date, the Debtors shall file an Application for a Final Decree as required by Federal Rule of Bankruptcy Procedure 3022 and the Debtors shall further seek entry of a discharge pursuant to 11 U.S.C Section 524(a).

E.     This Court shall retain jurisdiction to the fullest extent allowed by law.

F.     Consistent with the provisions of the Plan, the Effective Date, as defined in the Plan, shall be the 11th day following entry of this Order.

-4-

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

G.    Costs owing to the Court clerk, if any, shall be paid forthwith. Fees owing to the Office of the United States Trustee shall be paid until issuance of a Final Decree.

H.    Until such time as the Debtors seek and obtain their discharge, all creditors or other parties to the Bankruptcy Case are hereby enjoined against the commencement or continuation of an action, the employment of process, or any act, to collect, recover or offset any such debt as a personal liability of the debtor other than as specifically provided for in the Plan.

IT IS SO ORDERED:
Dated:

Sep 15, 2011

_____
United States Bankruptcy Judge

Date: 9/1/11                    INTERNAL REVENUE SERVICE


                               _____/s/Thomas Rohall_____
                               THOMAS ROHALL,
                               Special Assistant United States Attorney


Date: 9/5/11                   PITE DUNCAN, LLP


                               _____/s/Christopher M. McDermott_____
                               CHRISTOPHER M. MCDERMOTT,
                               Attorney for Citibank N.A. as Trustee of SACO I Trust
                               2006-8

Date: 8/31/11                  THE LAW OFFICES OF MICHAEL H.
                               RAICHELSON


                               _____/s/Michael H. Raichelson_____
                               MICHAEL H. RAICHELSON,
                               Attorney for Debtors

-5 -

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**EXHIBIT A**

5

1  Michael H. Raichelson (#174607)
Simon J. Dunstan (#164113)
2  **LAW OFFICES OF MICHAEL H. RAICHELSON**
Suite 352
3  6400 Canoga Avenue
Woodland Hills, California 91367
4  Telephone:  (818) 444-7770
Facsimile:   (818) 444-7776
5
Attorneys for Debtors
6  SAM RICHARD SANDS and
VIRGINIA ANN SANDS
7

8

9                UNITED STATES BANKRUPTCY COURT

10               EASTERN DISTRICT OF CALIFORNIA

11                      FRESNO DIVISION

12                                    )  Case No.: 10-11012
                                      )
13  In re:                            )  Chapter 11
                                      )
14                                    )  DC NO: MHR-10
SAM RICHARD SANDS and                 )
15  VIRGINIA ANN SANDS,               )  **STIPULATION BETWEEN INTERNAL**
                                      )  **REVENUE SERVICE AND DEBTORS**
16          Debtors.                  )
                                      )  Date:
17                                    )
                                      )  Time: 2:00 p.m.
18                                    )
                                      )  Location: 1300 18th Street, First Floor,
19                                    )  Bakersfield, California
                                      )
20                                    )  Judge: The Honorable Whitney Rimel
                                      )
21                                    )
                                      )
22                                    )

23

24          This Stipulation is entered into by and between creditor, the Internal Revenue

25  Service (the "Service"), by and through its attorney of record, Thomas M. Rohall, and the

26  Debtors and Debtors-In-Possession herein (the "Debtors"), by and through their attorney of

27  record, Michael H. Raichelson (collectively, the "Parties").

28

                                   - 1 -

On or about 6/8/06, the Service recorded its notice of federal tax liens for the periods 12/31/1999, 12/31/2000, and 12/31, 2001.

On or about 1/31/10, Debtors filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code and were assigned Bankruptcy Case No. 10-11012.

On or about 2/19/10, the Service filed a claim in Debtors' bankruptcy.

On or about 5/3/10, the Service filed its first amended claim in Debtors' bankruptcy.

On or about 5/20/11, Debtors filed their First Amended Chapter 11 Plan of Reorganization (the "Plan"), classifying the Service's secured claim in Class 3.03 and the Service's unsecured claim in Class 3.04.

On or about 6/3/11, the Service filed its second amended claim in Debtors' bankruptcy, asserting, based on the notice of federal tax liens filed on June 8, 2006 referenced above, a total tax due for the periods 12/31/1999, 12/31/2000, and 12/31/2001 of $111,012, penalties as of the petition date of $105,025.13 for said periods, and interest as of the petition date of $87,895.69, for a total of $303,932.82. In addition, the Service's second amended claim in Debtors' bankruptcy (referenced above) asserts unsecured general claims for the periods 12/31/2001, 12/31/2002, 12/31/2003, 12/31/2004, and 12/31/2005 based on the following: a total tax due of $297,944 for said periods, interest as of the petition date of $119,385.49 for said periods, and penalties as of the petition date of $179,759.17 for said periods, for a total general unsecured claim of $597,088.66.

On or about June 15, 2011, the Service filed its Objection to the Plan.

On or about June 21, 2011, the Parties came to an understanding regarding treatment of the Service's claims and the purpose of this Stipulation is to memorialize the Parties' agreement.

THE PARTIES STIPULATE AS FOLLOWS:

1. The Service, in complete satisfaction of its claims against Debtors, will be paid $150,000, together with interest at the rate of 4% under 26 U.S.C. §6621(a) as follows: Within 30 days of confirmation, debtors will make a $50,000 payment

-2-

and then the remaining $100,000 will paid in monthly installments of $1,366.88. The first monthly installment shall be received by the first day of each month until such time as the amount of the secured claim, plus interest has been fully paid.

2. The Service's Notices of Federal Tax Liens filed pre-petition shall remain on the property of the debtors and are not affected by the confirmation of the Plan.

3. Upon completion of the payments set forth in paragraph 1, the Service's Federal Tax Liens shall be deemed satisfied.

4. All payments made under the Plan shall be made in the form of cashier's check or certified funds and made payable to the United States Treasury and mailed to Internal Revenue Service, attn. Colbert Tang, Bankruptcy Advisor, at Mail Stop HQ5420, 55 South Market Street, Suite 801, San Jose, California, 95113. The Service may apply all the Plan payments to the claim for unpaid taxes penalties, or interest as it, in its sole discretion, may determine.

5. During the pendency of the Plan, debtors agree to timely file all required federal tax returns, including the income tax returns for the bankruptcy estates. Debtors shall also file within 30 days after confirmation of the Plan, the required income tax returns for the bankruptcy estates for the year 2010. The income tax return for the bankruptcy estate for tax year 2010 shall be filed with Internal Revenue Service, Insolvency Section 4, Attention: C., Tang, Mail Stop HQ 5420, 55 South Market Street, Suite 801, San Jose, California, 95113.

6. So long as any part of the Service's claim remains unpaid or so long as any tax liabilities accruing during the pendency of this Chapter 11 proceeding or Chapter 11 Plan, no liens, mortgages, or other security interests shall be created to provide a priority as to payment equal to or superior to that of the United States under the Plan.

-3-

JUL-29-2011  15:10    From:                          ID:                          Page:005  R=100%

7. Notwithstanding the provision of 11 U.S.C. §1141(d) or any other provision of the Plan or the Order confirming the Plan, the Debtors shall not receive a discharge as to the Service's pre-petition secured and unsecured general claims until the amount provided for in the Plan as to the Service's secured claim has been paid in full.

8. Notwithstanding any other provision of the Plan or the Order confirming the Plan, if the Debtors or the reorganized debtors fail to timely make any of the payments on federal taxes provided for in the Plan or fails to timely file any tax returns and pay any post-confirmation taxes during the duration of the Plan, the Service may declare that the Debtors are in default under the Plan by written notice of the Debtors and its counsel of record. Failure to declare that the debtors are in default does not constitute a waiver by the Service of its right to declare that the Debtors are in default.

9. If the default is not cured within ten (10) days of the date the Notice was mailed to the Debtors and its counsel, then the Service will have the right to seek relief from stay or file a Motion to Dismiss or Convert the case on 14 days notice.

10. The Service shall have the right to declare immediately due and payable the entire unpaid liability under the Plan together with any current liabilities and any interest or penalties which would have accrued on the pre-petition tax liabilities of the Debtors but for the filing of the Bankruptcy Petition, and if the Debtor fails to pay the interest and penalties, then they may be assessed by the Service;

11. If the debtors default more than three times under the terms of the Plan, then the Service will not further notify the debtor and counsel of the default, but will proceed with either a Motion for Relief from Stay or Motion to Dismiss or Convert.

///
///

-4-

**STIPULATION BETWEEN INTERNAL REVENUE SERVICE AND DEBTORS**

12. In exchange for the foregoing, this Stipulation shall constitute a ballot voting in favor of the Debtor's Plan, as may be amended from time to time, for Creditor's Secured Claim and Unsecured Claim.

Dated: 8/2/11

MICHAEL H. RAICHELSON
Attorney for the Debtors

Dated: 8/1/11

INTERNAL REVENUE SERVICE

THOMAS ROHALL,
Special Assistant United States Attorney

-5 -

STIPULATION BETWEEN INTERNAL REVENUE SERVICE AND DEBTORS

**EXHIBIT B**

2010-11012
FILED
August 15, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003700572

1  CHRISTOPHER M. MCDERMOTT (CA SBN 253411)
PITE DUNCAN, LLP
2  4375 Jutland Drive, Suite 200
P.O. Box 17933
3  San Diego, CA 92177-0933
Telephone: (858) 750-7600
4  Facsimile: (858) 412-2704

5  Attorneys for CITIBANK NA AS TRUSTEE OF SACO I TRUST 2006-8

6

7                    UNITED STATES BANKRUPTCY COURT

8          EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION

9  In re                                    Case No. 10-11012

10 SAM RICHARD SANDS AND VIRGINIA          D.C. No. TJW-1
   ANN SANDS,
11                                          STIPULATION REGARDING
                Debtor(s).                  TREATMENT OF CREDITOR
12                                          PURSUANT TO CHAPTER 11 AND
                                            ORDER THEREON
13

14

15

16        This Stipulation is entered into by and between Sam Richard Sands and Virginia Ann

17 Sands (hereinafter referred to as "Debtors"), by and through their attorney of record, Michael H

18 Raichelson; and CitiBank NA as trustee of SACO I Trust 2006-8  (hereinafter referred to as

19 "Creditor"), by and through its attorney of record, Pite Duncan, LLP.

20                              **RECITALS**

21        Debtors are the makers of a Note in favor of Metrocities Mortgage, LLC ("Lender")

22 dated, in the original principal amount of $105,000.00 ("Note"), which is secured by a Second

23 Deed of Trust encumbering the real property at 16031 Black Hawk Ave, Bakersfield, California

24 93314 (the "Subject Property").  The Subject Property is more fully described in the Deed of

25 Trust attached hereto as exhibit "A", which is incorporated herein by this reference.   The Note

26 and Second Deed of Trust are collectively referred to hereinafter as the "Subject Loan."

27 /./.

28 /./.

-1-

RECEIVED
August 15, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003700572

1    A.    On or about January 31, 2010, Debtors filed a voluntary petition under Chapter 11

2    of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of

3    California, and were assigned Case No. 10-11012.

4    B.    Subsequently, Lender's beneficial interest in the Note and Deed of Trust was

5    assigned and transferred to Creditor.

6    D.    On or about May 20, 2011, Debtors filed their First Amended Chapter 11 Plan of

7    Reorganization ("Debtors' Plan") that provides that Creditor's Second Deed of Trust

8    encumbering the Subject Property be avoided and that its claim be paid as an unsecured.  The

9    Debtors' Plan classifies the Creditor's claim in Class 3.02.

10    **FOR PURPOSES OF THE DEBTORS' PLAN ONLY THE PARTIES HEREBY**

11    **STIPULATE AND AGREE TO AN ORDER AS FOLLOWS:**

12    1.    Creditor's claim shall be allowed as a non-priority general unsecured claim in the

13    amount of $96,908.07.   Creditor shall file an amended Proof of Claim listing its claim as

14    unsecured to be paid in accordance with the Debtors' Plan;

15    2.    The avoidance of Creditor's Second Deed of Trust is contingent upon the Debtors'

16    substantial consummation of their Chapter 11 plan and the Debtors' receipt of a Chapter 11

17    discharge;

18    3.    Upon Debtors' receipt of a Chapter 11 discharge and substantial consummation of

19    their Chapter 11 Plan, Debtors may record the instant Stipulation with proof of said discharge

20    with the Kern County Recorder's Office which shall serve as a reconveyance of the Deed of

21    Trust;

22    4.    Creditor shall retain its lien for the full amount due under the Subject Loan in the

23    event of either the dismissal of the Debtors' Chapter 11 case or the conversion of the Debtors'

24    Chapter 11 case to any other Chapter under the United States Bankruptcy Code;

25    5.    In the event that the holder of the first lien on the Subject Property forecloses on its

26    security interest and extinguishes Creditor's Second Deed of Trust prior to the Debtors'

27    completion of their Chapter 11 Plan and receipt of a Chapter 11 discharge, Creditor's lien shall

28    attach to the surplus proceeds of the foreclosure sale for the full amount of the Subject Loan

-2-

1  balance at the time of the sale; and

2      6.    Each party shall bear their own attorneys' fees and costs incurred incident to the

3  action herein.

4      7.    In exchange for the foregoing, this Stipulation shall constitute a ballot voting in

5  favor of the Debtors' Plan.

6  IT IS SO STIPULATED:

7

8  Dated: **8/11/11**

9      By: _____

        MICHAEL H RAICHELSON

10      Attorney for Sam Richard Sands and Virginia Ann Sands

11

    PITE DUNCAN, LLP

12

13  Dated: 8/12/2011

14      By: /s/ CMM 253411

        CHRISTOPHER M. MCDERMOTT

    Attorney for CITIBANK NA AS TRUSTEE

15      OF SACO I TRUST 2006-8

16  IT IS SO ORDERED:

Dated:

Aug 15, 2011

    _____

    United States Bankruptcy Judge

21

22

23

24

25

26

27

28

**FIDELITY NATIONAL TITLE
MCLPC**

**James W. Fitch, Assessor – Recorder**
Kern County Official Records          RAWSONM
                                       5/18/2006
Recorded at the request of             10:37 AM
**Title Court Service**

Recording Requested By:
METROCITIES MORTGAGE, LLC

D O C #:    **0206123387**

| | Stat Types: 2 | Pages: | 9 |
|---|---|---|---|
| Fees | | | 38.00 |
| Taxes | | | 0.00 |
| Others | | | 0.00 |
| PAID | | | $38.00 |

After Recording Return To:
METROCITIES MORTGAGE, LLC
ATTN: DOCUMENT CONTROL
15301 VENTURA BLVD. SUITE D300
SHERMAN OAKS, CALIFORNIA 91403

Prepared By:
METROCITIES MORTGAGE, LLC

[Space Above This Line For Recording Data]

DOC ID #: 21062671                    MIN: 100034200057175287

## DEED OF TRUST AND ASSIGNMENT OF RENTS

This deed of trust secures an obligation which calls for payment of interest at a variable interest rate.
THIS DEED OF TRUST is made this **10TH** day of **MAY 10, 2006** , between
**SAM R. SANDS AND VIRGINIA A. SANDS, HUSBAND AND WIFE AS JOINT TENANTS**

herein called "Trustor,"
**FIRST AMERICAN TITLE INSURANCE CO.**
herein called "Trustee," and "Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for
**METROCITIES MORTGAGE LLC**
(hereinafter "you" or "Lender" and Lender's successors and assigns.) MERS is organized and existing under the laws
of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-
MERS, herein called "Beneficiary."

Trustor irrevocably grants, transfers and assigns to Trustee, in trust and with power of sale, all of the real property in
the City or Town of    **BAKERSFIELD**
County of   **KERN COUNTY**                         State of California, having the street address of
**16031 BLACK HAWK AVENUE**
and more specifically described as:

**LOT 17 OF TRACT 5609 A, IN THE UNINCORPORATED AREA OF THE COUNTY OF KERN, STATE
OF CALIFORNIA, AS PER MAP RECORDED JANUARY 27, 1993 IN BOOK 40, PAGES 39 THROUGH
41 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.**

HELOC - CA Deed of Trust with MERS                   Page 1 of 9
FE-4331(CA) (0204)

**EXHIBIT A**

Parcel ID Number:   **408-183-02-00-2**                     together with all improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to Beneficiary to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, water rights, and water stock, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this deed of trust; and all of the foregoing, together with said property (or the leasehold estate if this deed of trust is on a leasehold) are herein referred to as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Deed of Trust.

1.      THIS DEED OF TRUST SECURES:

a.      All of the obligations of Trustor in favor of Beneficiary or order under the terms of a revolving credit agreement dated **MAY 10, 2006**                     , herein called Agreement. The Agreement provides, among other things, for the payment of all sums advanced by Beneficiary from time to time pursuant to the Agreement and for the payment of interest. The maximum principal obligation under the Agreement to be secured by this deed of trust at any one time is
**ONE HUNDRED FIVE THOUSAND AND 00/100**
Dollars (**$ 105,000.00**                     ) unless Beneficiary, with Trustor's written consent, hereafter increases this amount. Advances made by Beneficiary to protect the security of this deed of trust or to preserve the Property shall not be subject to the limitation of the preceding sentence.

The security of this deed of trust shall not be affected by the extension, renewal or modification from time to time of the obligations, instruments or agreements described above.

b.      Payment of any and all obligations and liabilities, whatsoever, whether primary, secondary, direct, indirect, fixed or contingent, whether now or hereafter due from Trustor (or any successor in interest to Trustor) whether created directly or acquired by assignment if the document evidencing such obligation or liability or any other writing signed by Trustor (or any successor in interest to Trustor) specifically provides that said obligation or liability is secured by this deed of trust.

c.      Performance of each agreement of Trustor herein contained or contained in any other agreement, instrument or other writing to which Trustor is a party if the same is written in connection with any of the foregoing.

d.      Payment of all sums to be expended by the Beneficiary or Trustee pursuant to the terms hereof.

2.      TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:

a.      To keep the Property in good condition and repair; not to remove or demolish any building or improvement thereon; to complete or cause to be completed any construction of buildings or other improvements thereon which are financed in whole or in part by the indebtedness secured hereby and to restore promptly and in good and workmanlike manner any building or other improvement which may be damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting the Property or requiring any alteration or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, weed, fertilize, fumigate, spray, prune and do all other acts which from the character or use of the Property may be reasonably necessary, the specific enumerations herein not excluding the general.

**EXHIBIT A**

b.      To provide, maintain and deliver to Beneficiary fire and other insurance on the Property satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary, the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default hereunder or invalidate any act done pursuant to such notice.

c.      To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this deed of trust.

d.      To pay at least ten days before delinquency all taxes and assessments affecting the Property, including, without limitation, assessment on appurtenant water stock, all encumbrances, charges and liens on the Property or any part thereof, and all costs, fees and expenses of this Trust.

e.      That should Trustor fail to make any payment or do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may:

(1)     Make or do the same in such manner and to such extent as either may deem necessary or appropriate to protect the security hereof, Beneficiary or Trustee being authorized to enter upon the Property for such purposes.

(2)     Appear in and defend any action or proceeding purporting to affect the security hereof or the rights or power of Beneficiary or Trustee.

(3)     Pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior and superior hereto.

(4)     In exercising any such powers, pay necessary expenses, employ counsel and pay his or her reasonable fees.

f.      To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the maximum rate allowed by law in effect at the date hereof or at the option of Beneficiary, such sums may be added to the principal balance of any indebtedness secured hereby and shall bear the highest rate of interest as any such indebtedness.

g.      To pay for any statement provided for by the law in effect on the date hereof regarding the obligation secured hereby in the amount demanded by the Beneficiary but not to exceed the maximum allowed by law at the time the statement is demanded.

3.      IT IS FURTHER AGREED THAT:

a.      Any award of damages in connection with any condemnation for public use of or injury to the Property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such monies received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

HELOC - CA Deed of Trust with MERS
FE-4331(CA) (0204)

Page 3 of 9

4/00

EXHIBIT A

b.    By accepting payment of any sum secured hereby after its due date, or after the filing of notice of default and of election to sell, Beneficiary shall not waive its right to require prompt payment when due of all other sums so secured, or to declare default for failure so to pay, or to proceed with the sale under any such notice of default and of election to sell, for any unpaid balance of said indebtedness. If Beneficiary holds any additional security for any obligation secured hereby, it may enforce the sale thereof at its option, either before, contemporaneously with, or after the sale is made hereunder, and on any default of Trustor, Beneficiary may, at its option, offset against any indebtedness owing by it to Trustor, the whole or any part of the indebtedness secured hereby.

c.    Without affecting the liability of any person, including, without limitation, Trustor, for the payment of any indebtedness secured hereby, or the lien of this deed of trust on the remainder of the Property for the full amount of any indebtedness unpaid, Beneficiary and Trustee are respectively empowered as follows:

(1)    Beneficiary may from time to time and without notice (a) release any person liable for the payment of any of the indebtedness, (b) extend the time or otherwise alter the terms of payment of any of the indebtedness, (c) accept additional security therefor of any kind, including deeds of trust or mortgages, (d) alter, substitute or release any of the Property securing the indebtedness.

(2)    Trustee may, at any time, and from time to time, upon the written request of Beneficiary (a) consent to the making of any map or plat of the Property, (b) join in granting any easement or creating any restriction thereon, (c) join in any subordination or other agreement affecting this deed of trust or the lien or charge thereof or, (d) reconvey, without any warranty, all or any part of the Property.

d.    Upon (a) written request of Beneficiary or (b) performance of all obligations of the Trustor hereunder and under each and every note, guarantee, Agreement or other writing evidencing the indebtedness secured hereby, and upon surrender of this deed of trust to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the Property then held hereunder. The recital in such reconveyance of any matters of facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." Five years after issuance of such reconveyance, Trustee may destroy said note, guarantee, Agreement or other evidence of indebtedness and this deed of trust (unless directed in such request to retain them).

e.    Trustor hereby gives to and confers upon Beneficiary the right, power and authority during the continuance of these trusts to collect the rents, issues and profits of the Property and of any personal property located thereon, and hereby absolutely and unconditionally assigns all such rents, issues and profits to Beneficiary; provided, however, that Beneficiary hereby consents to the collection and retention of such rents, issues and profits as they accrue and become payable only if Trustor is not, at such time, in default with respect to payment of any indebtedness secured hereby or in the performance of any agreement hereunder. Upon any such default, Beneficiary may at any time, without notice, either in person, by agent, or by a receiver to be appointed by a court, without regard to the adequacy of any security for the indebtedness hereby secured and without limiting the generality of Section 2.e.(1), above, enter upon and take possession of the Property or any part thereof, and in its own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine; also perform such acts of repair, nurturing, cultivation, irrigation, weeding, fertilizing, fumigation, spraying, pruning or protection, as may be necessary or proper to conserve the value of the Property or any trees, planting or crops growing thereon; also lease the same or any part thereof for such rental, term, and upon such conditions as its judgment may dictate; also prepare

EXHIBIT A

for harvest, sever, remove, and sell any crops that may be growing upon the premises, and apply the net proceeds thereof to the indebtedness secured hereby. The entering upon and taking possession of the Property and performance or failure to perform any of the acts described in the preceding sentence, the collection of or failure to collect such rents, issues and profits, and the application thereof as aforesaid, shall not waive or cure any default or notice of default hereunder, or invalidate any act done pursuant to such notice and shall not constitute or otherwise result in any assumption by or liability of Beneficiary for maintenance, depreciation, misuse or risk of loss other than for damage or loss to the Property due to Beneficiary's gross negligence or intentional torts. Trustor also assigns to Trustee, as further security for the performance of the obligations secured hereby, all prepaid rents and all monies which may have been or may hereafter be deposited with said Trustor by any lessee of the premises herein described, to secure the payment of any rent, and upon default in the performance of any of the provisions hereof, Trustor agrees to deliver such rents and deposits to the Trustee.

f.      Upon default by Trustor in the performance of any payment or other obligation secured hereby or in the performance of any agreement hereunder, or if, whether voluntarily or involuntarily, there is a sale or transfer of all or any part of (i) the Property or an interest therein, or (ii) a beneficial interest in Trustor and Trustor is not a natural person, or if Trustor ceases to use the Property as Trustor's primary residence, Beneficiary may declare all sums secured hereby immediately due without notice or demand and no waiver of this right shall be effective unless in writing and signed by Beneficiary.

g.      Waiver of a right granted to Beneficiary hereunder as to one transaction or occurrence shall not be deemed to be a waiver of the right as to any subsequent transaction or occurrence. Beneficiary may rescind any notice before Trustee's sale by executing a notice of rescission and recording the same. The recordation of such notice shall constitute also a cancellation of any prior declaration of default and demand for sale, and of any acceleration of maturity of indebtedness affected by any prior declaration or notice of default. The exercise by Beneficiary of the right of rescission shall not constitute a waiver of any default then existing or subsequently occurring, nor impair the right of the Beneficiary to execute other declarations of default and demand for sale, or notices of default and of election to cause the Property to be sold, nor otherwise affect the note or deed of trust, or any of the rights, obligations or remedies of the Beneficiary or Trustee hereunder.

h.      At least three months or any lesser period required by law having elapsed between the recordation of the notice of default and the date of sale, Trustee, having first given notice of sale as then required by law, shall sell the Property at the time and place of sale fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as the Trustee may determine, at public auction to the highest bidder for cash, in lawful money of the United State of America, payable at the time of sale except as otherwise permitted by law. Trustee may postpone sale of all or any portion of the Property by public announcement at the time of sale, and from time to time thereafter may postpone the sale by public announcement, all as permitted by law. Trustee shall deliver to the purchaser its deed conveying the Property so sold, but without any covenant or warranty, expressed or implied. The recital in any such deed of any matters or facts, stated either specifically or in general terms, or as conclusions of law or fact, shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary, may purchase at the sale. After deducting all costs, fees and expenses of Trustee and of this trust, including costs of evidence of title in connection with the sale, the Trustee shall apply the proceeds of this sale to the payment of all sums then secured hereby, in such order and manner as may be required by the Beneficiary; the remainder, if any, to be paid to the person or persons legally entitled thereto. If Beneficiary shall elect to bring suit to foreclose this deed of trust in the manner and subject to the provisions, rights and remedies relating to the foreclosure of a mortgage, Beneficiary shall be entitled to reasonable attorney's fees and litigation costs.

EXHIBIT A

i.     Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this deed of trust is recorded and the name and address of the new Trustee.

j.     This deed of trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including, without limitation, pledgees, of the note, guarantee, Agreement, or other evidence of indebtedness secured hereby, whether or not named as Beneficiary herein. In this deed of trust, whenever the context so requires, the singular number includes the plural.

k.     Trustee accepts this Trust when this deed of trust, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other deed of trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

l.     If Trustor or any successor in interest to Trustor sells, transfers or encumbers any interest in the Property, whether voluntarily or involuntarily, or if a beneficial interest in Trustor is sold or transferred, voluntarily or involuntarily, and Trustor is not a natural person: (a) the transferor and the transferee shall each immediately give written notice of said transfer to the Beneficiary, at its address designated on the first page of this deed of trust; (b) if the deed of trust secures Trustor's obligation under an Agreement as defined herein, all credit extended by Beneficiary under the Agreement, whether before or after the property is transferred, shall be secured under this deed of trust as if no transfer had occurred except for credit extended by Beneficiary more than five days after it has received the written notices required by this paragraph.

m.     The pleading of any statute of limitations as a defense to any and all obligations secured by this deed of trust is hereby waived to the full extent permitted by law.

4.     WITH REGARD TO ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES, TRUSTOR AGREES:

a.     As used in this Paragraph 4:

(1)     "Environmental Law" means all federal, state and local law concerning the public health, safety or welfare, environment or a Hazardous Substance, including without limitation, the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Sec. 9601 et seq., Resource Conservation and Recovery Act, 42 U.S.C. Sec. 6901 et seq., Toxic Substances Control Act, 15 U.S.C. Sec. 2601 et seq., Hazardous Materials Transportation Act, 49 U.S.C. Sec. 1801 et seq., Clean Water Act and Water Quality Act of 1987, 33 U.S.C. Sec. 1251 et seq., Safe Drinking Water Act, 41 U.S.C. Sec. 300f et seq., Clean Air Act, 42 U.S.C. Sec. 7901 et seq., Carpenter-Presley-Tanner Hazardous Account Act, Cal.Health & Safety Code Sec. 25300 et seq., Hazardous Waste Control Law, Cal.Health & Safety Code Sec. 25100 et seq., Porter-Cologne Water Quality Control Act, Cal.Water Code Sec. 1300 et seq., Hazardous Waste Disposal Land Use Law, Cal.Health & Safety Code Sec. 25220 et seq., Safe Drinking Water and Toxic Enforcement Act of 1986, Cal.Health & Safety Code Sec. 25249.5 et seq., Hazardous Substances Underground Storage Tank Law, Cal.Health & Safety Code Sec. 25280 et seq., Air Resources Law, Cal.Health & Safety Code Sec. 3900 et seq., Hazardous Materials Release Response Plans and Inventory, Cal.Health & Safety Code Sec. 25500 et seq., and Toxic Pits Cleanup Act of 1984, Cal.Health & Safety Code Sec. 25208 et seq.

HELOC - CA Deed of Trust with MERS                        Page 6 of 9                                    4/00
FE-4331(CA) (0204)

EXHIBIT A

(2)     "Hazardous Substance" means any substance which has characteristics of ignitability, corrosivity, toxicity, reactivity or radioactivity or other characteristics which render it dangerous or potentially dangerous to public health, safety or welfare or the environment, including without limitation, (i) petroleum or any fraction or other byproduct thereof, (ii) asbestos, (iii) lead, (iv) cyanide, (v) polychlorinated biphenyls, (vi) urea formaldehyde and (vii) anything defined as a "hazardous material," "toxic substance," "hazardous substance," "hazardous waste" or "waste" under any Environmental Law, including without limitation, "hazardous substance" as defined in Cal.Health & Safety Code Sec. 25316 and "waste" and "hazardous substance" as defined in Cal.Water Code Sec. 13050(d) and Sec. 13050(p)(l), respectively. The term is intended by Trustor and Beneficiary to be interpreted in its most comprehensive and cumulative sense.

b.     Trustor represents and warrants that except as disclosed to and acknowledged in writing by Beneficiary before the date of this deed of trust:

(1)     No Hazardous Substance has been located, used, manufactured, generated, treated, handled, stored, spilled, disposed of, discharged or released by any person on, under or about the Property.

(2)     Trustor has no knowledge of or reason to believe that there is any pending or threatened investigation, assessment, claim, demand, action or proceeding of any kind relating to (i) any alleged or actual Hazardous Substance located under or about the Property or (ii) alleged or actual violation or noncompliance by Trustor or any tenant of Trustor with regard to any Environmental Law involving the Property.

(3)     Neither Trustor nor any tenant of Trustor is required by any Environmental Law to obtain or maintain any permit, license, financial responsibility certificate or other approval as a condition to its business operations or in connection with its use, development or maintenance of the Property.

c.     Trustor represents and warrants that Trustor and every tenant of Trustor have been, are and will remain in full compliance with any Environmental Law applicable to its business operations and its use, development or maintenance of the Property.

d.     Trustor agrees to permit, or cause any tenant of Trustor to permit, Beneficiary to enter and inspect the Property at any reasonable time for purposes of determining, as Beneficiary deems necessary or desirable: (i) the existence, location and nature of any Hazardous Substance on, under or about the Property, (ii) the existence, location, nature, magnitude and spread of any Hazardous Substance that has been spilled, disposed of, discharged or released on, under or about the Property or (iii) whether or not Trustor and any tenant of Trustor are in compliance with applicable Environmental Law. If Trustor or its tenant fails to comply fully with the terms hereof, Beneficiary may obtain affirmative injunctive relief therefor.

e.     Trustor agrees to indemnify and hold Beneficiary and its successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including, without limitation, all costs of litigation and attorneys' fees, which Beneficiary and its successors and assigns may directly or indirectly sustain or suffer as a consequence of any inaccuracy or breach of any representation, warranty or promise made in this deed of trust in connection with any Hazardous Substance or Environmental Law. Notwithstanding any of the language in the deed of trust to the contrary, this indemnity covers claims asserted after all the indebtedness secured by this deed of trust has been paid and discharged, whether or not the deed of trust has also been reconveyed to Trustor. The only exclusions hereto may relate to claims arising out of the affirmative acts of Beneficiary or of a third party after Trustor's interest in the Property has terminated.

**EXHIBIT A**

f.      The provisions of this Paragraph 4 shall not be affected by the acquisition by Beneficiary or its successors or assigns of any ownership or other interest in the Property beyond Beneficiary's security interest in the Property created under this deed of trust, whether or not such acquisition is pursuant to the foreclosure of this deed of trust or a merger of the interest of the Beneficiary or its successors and assigns in the Property.

5.      ADDITIONAL PROVISIONS:

a.      The execution of this deed of trust by any person who has no present interest in the Property shall not be deemed to indicate that such an interest presently exists. Rather, execution of this deed of trust by such a person shall constitute such person's agreement that if such person hereafter acquires an interest in the Property, such interest shall be subject to Beneficiary's interest hereunder.

b.      The execution of this deed of trust by any person who has a present interest in the Property shall not in itself be deemed to indicate that such person is liable to Beneficiary for any obligation described in Section 1., above. Any personal liability of such person to Beneficiary shall be determined on an independent basis (such as execution of the document or documents evidencing the obligation described in Section 1., above). Execution of this deed of trust by any such person shall nevertheless indicate that such person's interest in the Property shall be subject to Beneficiary's interest hereunder.

The undersigned Trustors request that a copy of any notice of default, and of any notice of sale hereunder, be mailed to their respective addresses set forth opposite each signature.

By signing below, Trustor agrees to all the terms and conditions of this deed of trust.

Mailing Address For Notices

**16031 BLACK HAWK AVENUE
BAKERSFIELD
CA.    93314**

SAM R. SANDS

VIRGINIA A. SANDS

HELOC - CA Deed of Trust with MERS
FE-4331(CA) (0204)

Page 8 of 9

Initials

**EXHIBIT A**

State of California
County of Kern
On May 11, 2006 , before me Samuel Reyna Jr. , Notary Public
,personally appeared



San R. Sands and Virginia M. Sands

, ~~personally known to me~~ (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

SAMUEL REYNA JR.
COMM. #1503325
NOTARY PUBLIC - CALIFORNIA
KERN COUNTY
My Comm. Exp. JULY 25, 2008

HELOC - CA Deed of Trust with MERS          Page 9 of 9
FE-4331(CA) (0204)

**EXHIBIT A**